Good morning. Please be seated. We have a little bit of an unusual situation this morning, and that is that Judge Plager is with us by phone and also video. So I just want to acknowledge Judge Plager. Are you with us? Judge Plager? Oh, sorry. Yes, I'm here and able to hear you quite well. I hope you can hear me as well. Excellent. And I also have video ability to see the person arguing at the podium. Very good. And we'll try to make sure we can accommodate any questions you might have. Thank you. Mr. Murphy, whenever you're ready. First case is 141689, In Re Hitachi Metals, Ltd. Thank you, and may it please the Court. The Board's obviousness type double patenting rejection here must be reversed because it's wrong for two reasons. First, it's wrong as a matter of law, and second, it lacks substantial evidence. The Board's job here to make out this rejection was to show that claim one of the 651 patent, the one in reexamination, was an obvious bearing of the base patent claims, the 368 patent. But it didn't do it because the conclusion the Board drew, its analysis, the best way to see it, it's entirely laid out on A18 and A19 of the appendix. How did the Board's failure to consider the secondary gram factors impact the opinion in this case? So the secondary gram factors, when you say secondary gram factors, do you mean the... The secondary considerations of the gram factors. I don't think we raised that on appeal as to whether the objective considerations of obviousness were properly considered or not. Oh, okay. I'll take a look at your brief. I have a note that says that you did on pages 29 and 30 of your brief. Well, now, one thing that we did raise is that the NCEP, and certainly Gram v. Deere, requires an obviousness analysis where you step through the factual foundations of obviousness. Right. So how did the failure to do that impact the outcome? Understood. Well, the failure to do it impacted the outcome because in order to make a determination that one claim is an obvious variant of another, you first have to make a determination as to the scope and content of the prior art and the differences between the later claim and the earlier claim. And the failure to lay out those differences actually was harmful error here because it led the Board to make a conclusory decision that was unsupported by substantial evidence. Where's the area of law here? Is it your argument that they shouldn't have looked at the specification at all? It's not the law that they're forbidden from looking at the specification at all. They are allowed to look at it. This Court's cases say you're allowed to look at the specification as necessary to construe claims, and you're also allowed to look at the specification for a second reason. When you're comparing two claims and determining whether one claim is obvious in view of another, it can be a difficult exercise because neither claim is necessarily a good description of a thing. These are legal meets and bounds. And if you're trying to determine whether one scope of a claim is an obvious variant of another one, it can be helpful certainly for the newer claim, the base claim, to look at examples. If there's an embodiment in the specification of that claim, it can help provide the analysis a little bit of meat. But why isn't what happened here exactly the way it's supposed to be? The term in the claim is consisting essentially of, and we want to know whether A and B were contemplated as being part of that. So in order to look at that, we're talking about the original claim, we look to the specification. And that's what drove the Board's analysis here, as truncated as you may argue it was. What's wrong with that? I agree to a point. So the consists essentially of is a term of art, and it should be construed where necessary. So if you're looking at the base claim, which says consists essentially of, I think it's fair enough to ask as a matter of claim construction what that's supposed to mean. And I don't think there's any dispute here that it excludes the things that affect the basic and material characteristics of the claimed invention. But it can include other compounds. Yes, and that's what consists essentially of means. It can include other compounds that do not affect the basic and material characteristics of the invention. And that is an appropriate step to take. But the error is in what that means and what the Board did with it. One way to think about the error... Wait, when you say that, what are you referring to? What means? The implications of the construction of consists essentially of, Your Honor. If you think about what the result here was when the Board looked at it, they said, well, we're going to ask ourselves whether consists essentially of, does it exclude X and A elements? That's a fair question. Because if the construction of what are the novel and basic characteristics that we're interested in actually were to exclude X and A, well, it wouldn't be a very long obviousness analysis. It would really be very little chance of obviousness. But the opposite result does not create a conclusion of obviousness. The opposite result, which is that the claims do not exclude X and A, all that does essentially, it converts the claim transition from consists essentially of to comprising with respect to those elements. But rather than do not exclude, what if it's necessarily include? Well, that is an entirely different ball of wax. Absolutely. That would be an inherent anticipation theory which has not been advanced by the Board and is not an issue on appeal. But why is the Board, but the Board ultimately said that consisting essentially of includes, that looking at the spec of the original claim includes X and A elements and therefore it was clearly, it was obvious. Why isn't that a natural legal conclusion, a correct legal conclusion? Well, I think if you look at the N. Ray Kaplan case, what that teaches is just because one claim, a base claim, is broader in scope in some respects than the claim that's being analyzed and in some respects dominates at least some embodiments of the later claim, that does not yield a conclusion of obviousness automatically. Kaplan held that squarely. That's true, but Kaplan involved kind of a different set of circumstances and Judge Rich, I believe there, said, well, it was the best mode and he wasn't going to use that disclosure. But that's not what we have here, is it? Well, the facts are different, but I believe that the law should be applied in the same way because at the minimum I would certainly say the conclusion of obviousness is not automatic having construed the claim. It's fair enough to construe the claim to say it does not exclude X and A, but you still have to ask the question of why would a person of ordinary skill in the art at the time have been motivated to include X and A. That is the ultimate obviousness question, and that is a question that's on appeal squarely. Now, that obviousness question, the way the Board answered it, is right on A19, and it's a one-sentence answer to possibly the most important question in the case. And they say on the bottom of the first paragraph of A19, the selection of such impurity-containing materials would have been obvious to one of ordinary skill in the art. I'm sorry, I'm on A19, but where were you referring to? Oh, in the first paragraph. That's correct. Okay, got it. Thank you. The selection of such impurity-containing materials would have been obvious to one of ordinary skill in the art as a way to provide a cheaper source of compounds recited in the claims. That is the entire obviousness analysis. That's it. There's no underlying factual findings to support that. There's no discussion of, well, here's another piece of prior art that talks about impurities and metals and what people of skill would have thought about using different kinds of impurities and so on. And the government on appeal has characterized this as a common-sense articulation under KSR and cases that follow from that. First of all, the Board didn't say that. And second of all, it shouldn't have said that and it couldn't have said that because common sense, using that as an obviousness rationale, requires building a foundation. You have to show that essentially everything is working as you'd expect, no surprises, a person of skill understands that all the pieces are right there, and then you just put them together and that last step is common sense. That foundation has to be built, and it wasn't built by the Board, and it can't be built on appeal. And there's even some particular examples as to why this reasoning really can't apply. One of them is the fact that X and A are impurities comes from the specification. And I don't mean it to sound like a trivial point, but although the status of X and A as impurities came into the consideration when construing the claim, it shouldn't be recycled later for the actual obviousness analysis because that's dipping back into the specification for its use as prior art. Well, it's kind of hard to draw that line. Do you have a case that says that? I mean, it's kind of hard to draw the distinction where we can sort of use the spec but not use the spec. So how would you articulate it again? You say it's okay to look at the spec in terms of construing the claim and whether or not X or A were included, but then you can't consider those for the obviousness analysis? A good example is the Vogel case. It's one of the foundational cases for obviousness-type double patenting. Now, that case came out, some of the claims came out our way, and some of them came out the government's way. And the reason was there in that case you had a base claim that said pork and then you had two different new claims that came along, one that said meat, one that said beef, and both added a new type of processing. The court, when it looked at this, said, well, this new type of processing is provided by prior art. We're not going to get that out of the specification. That comes from prior art. The expansion of the claim to meat, well, since that is essentially that aspect is anticipated by pork, well, that one's going to be obviousness-type double patenting, but the beef one is not. And in Vogel, the court was careful to say we're going to use the specification to help us understand the claims, but what we're not going to do is use it as prior art. Instead, we're going to actually find prior art, which was the LE's reference. In our case, there is no equivalent to the LE's reference. There is no prior art talking about what these impurities are and whether they should be included. And not only should they be included at all, but should they be included in combination? And one last point I'd like to touch on is that there is no discussion of here in the board's decision or even in the government's briefing on appeal as to why you would take not only perhaps an X impurity that might be present in one element and an A impurity in another one, but both and put them together could have any number of effects that are not commonsensical at all. If there's anything from reading these patents that's taught me is that some of these effects are relatively surprising. Why don't we hear from the government and we'll say here we go. Isn't what the government is saying is that those impurities were there to start with and they're simply identified? We have a number of arguments. That is absolutely one aspect of it. The specification itself in several places describes the starting materials, describes the impurities that are present, and actually describes the process of making the claimed invention. Inevitably, the impurities are carried on. So they talk about inevitability in the specification itself. So that is an aspect of our argument. I think that actually underscores why we think this is really a very strong obviousness type double patenting case, which is the later patent claim takes away from the public the right to use the earlier claim. It's not just a blocking claim, but it is essentially claiming the same thing over again in a way that prevents the public from enjoying the use. So the foundations of obviousness type double patenting are equitable and they come from the idea that once a patent claim expires, the public gets to use it. But that's a conclusion that begs the question of whether or not this was really included or this was obvious. And isn't your friend correct that at a minimum the board's analysis here was rather thin? I would disagree. They started at broad point A and get to point Z and there's nothing seemingly in between. Sure, and I think that every case has to be taken upon the facts that are necessary to decide that case. And here there's a very, very small number of facts that are necessary to decide the case. The claims are construed in light of specification and as Mr. Murphy discussed, the claims were correctly construed to allow the inclusion of these impurities, the impurities that the specification says do not change the material properties of the claim composition. Frankly, if you got a construction from a district court that was along the lines of construing the earlier Segalo claims that had something along the lines of, and expressly in that construction, and it could contain up to X amount of these impurities, I think that's an affirmative vote. I think you would affirm that construction. I don't think there's anything wrong with that construction. So the construction itself, frankly, is very, very similar to what is later claimed. A correct construction of that claim is very similar to what was later claimed. Second, when the board has to go back, when the board goes back and looks at the specification, there really is not much that needs to do. There's very little that needs to do at that point. Very few fact findings. The fact findings are that essentially the only fact finding that needed was that it would be obvious to use, instead of exquisitely pure iron, exquisitely pure boron, exquisitely pure, which the specification never contemplates using. So it's not even clear that there's a written description support for compounds that would not use, that would be completely pure, devoid of any impurities. And so they go back, they make that factual finding, and it is a common sense. A cost-sensitive person would use a less pure within the limits that the specification tells you. But does it really say that? I mean, I'm looking at the analysis, which I think Mr. Murphy pointed us to on A19, and they just seem to say the presence of additional ANF elements would have been obvious. Not why, how, whatever. It's all conclusory language, is it not? Well, they have a rehearing decision as well. Let me just make sure I'm, he's signing an A19, and then they have a later decision on their request for a hearing where these issues are raised, and they flesh it out. And so they go through, and this is A31 through, I guess A35, and they flesh out their analysis and their hearing decision, but it's fundamentally the same analysis. Let me answer your question squarely, though, because I don't want to skip ahead. Yes. That's true. This is a very brief analysis in their initial opinion of A19. But ultimately, I'm not sure that anything additional is necessary, because all it's saying is to practice the claim, it's obvious to practice the claim as the parent says to practice the claim. That's what the finding is. And it's nothing more than that. And so, under the obviousness type double parenting doctrine... Aren't they really saying the claim is no different? It's not that the claim is any different. It's simply saying, if you take the SIGALA, the earlier SIGALA claim, and you wanted to make claim one or claim, I think, 13 or any of the other claims, if you wanted to make that composition after the patent expired, you would go to the specification, you'd make that composition, and at the end of the day, you would have exactly what was claimed in the later patent. And that's why it is an obviousness type double parenting rejection. It's not a straight double parenting rejection, because the words are literally different. The scope is literally different. But it's so obvious to do to practice the patent in the way that the patent should be practiced. Well, how do you respond to Mr. Murphy's argument about use of the specification and how he's acknowledging that you can use it in terms of the claim construction, but then you can't just take what's in the spec and use that for your obviousness? I think you're right that there's a little bit of murkiness there. I think the cases come out different ways. But what is clear from those cases is that if you have a later claim that blocks one of your fundamental rights to make use of an earlier claimed invention, those fall within obviousness type double parenting, even if you have to rely on the specification to get there. An example is if you have an earlier claim to a pharmaceutical drug and then you have a later claim to a method of use of that drug that was disclosing specifications. Those are invalid, and that's what the court has held on several occasions. The other side of the coin is if you have different chemical compositions claimed. And maybe based upon the specification, it would be obvious to take and transform the earlier composition to the later composition, but that's impermissible use of the specification. That's not what we have here. Here we just have practicing the earlier claim, and that's exactly the type of thing that falls within the obviousness type double parenting doctrine. And I would say it's probably very, very similar to, at least in my mind, it's very similar to the situation of an earlier claim to a drug molecule, a later claim to the use of that molecule. In this case, it's a different right that's implicated, the right to make that molecule as disclosed in the specification, but I think it's part and parcel of the same thing. Judge Plager, did you have anything? Can you hear me? Yes. Do you have any? Mr. Helms is about to sit down, I think, so I wondered if you had any questions. I do not have any questions for him, but I do have a question for Mr. Murphy when he's back on his feet, if that's okay. All right. I think he's going to come back shortly. Thank you very much, Your Honor. Thank you. All right. Mr. Murphy, Judge Plager awaits. Mr. Murphy, let me be sure that I'm following exactly where you want to lead us. In your brief, you conclude with the following statement. Accordingly, the court should vacate the board's decision and remand for further findings, or, in the alternative, reverse the board's new-obviousness-type double-passing rejection. Now, since we correct errors rather than make new ones, I doubt that we would want to undertake to finally decide whether the board was right or not on its new-obviousness-type double-passing rejection as an initial matter. So let's assume hypothetically that we decide we should vacate the board's decision and remand it for further findings, as you request. Let's assume that. What would you expect the board to then do? The board, as I understand it, and your objection to what the board did, was they rejected the examiner's theory of why the 651 patent claims were obvious, and they came up with their own, what they call the new ground for rejection, which was this double-patenting based on the 368 patent. Now, it is true that the board's explanation of that obviousness-type double-patenting is rather thin, as Chief Judge Post noted earlier. But let's assume we vacate and send it back. Given the excellent blueprint that you provided the board in your brief, and now in the argument, as to exactly what the board failed to do, I would assume that they would, because they're reasonably confident lawyers, they would rewrite that opinion in extensive language, doing exactly all the things that you thought they failed to do. At which point, it presumably would come back up here, and you would have no more case. We would occur. Why are you asking us to go through what seems to me, on the merits, to be a rather useless waste of judicial and board resources? What's your point? Do you really think the board will change its mind if we send it back now that you've told them how to do it right? Two answers to that. The first answer is, we directly challenged the board on reconsideration on this exact point. We said, show us what you have, and they didn't have it on reconsideration. On reconsideration, they rehashed the same material and essentially endorsed their first ruling. So we do believe that on remand, back to the board, that the board will have no choice but to confirm the patentability of the claim, and that is as the reexamination process is intended. We've been in reexamination with these claims for something like five years. The MDEP requires, and presumably the examiner has taken its absolute best shot. The vast majority of the rejections were reversed by the board, and the only remaining one is too thin to be sustained, and I think if that is confirmed, that the board will confirm the claims. Well, you do understand that the factual basis for the board's decision is basically the written description and claims in the 368 patent. That's not going to go anywhere, is it? If what you're referring to is that the basis of the rejection is the material and the specification, then I would urge this court to hold when remanding the case that the board is not to draw on the specification in making its obviousness rejection. Even if it wants to use the written description to understand what is meant by the 368 patent claims, a position that we have clearly taken in earlier cases? By all means, the board is entitled to and should look to the embodiments. For example, Table 6, which it did, but if you look at Table 6 and the accompanying description, which is an embodiment of the base claim, what you'll see there is no disclosure of, for example, the X elements, or what impact they might have on the basic and novel characteristics of the claim. So, even relying on the specification, their rejection is infirm. Thank you, Mr. Murphy. I think I better understand your case now. I see I'm out of time. Is there no further questions? I have no further questions, Chief Judge. Okay, thank you.